## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Zhu Guiying,

Plaintiff,

    v.

The Individuals, Partnerships and Unincorporated
Associations Identified on Schedule A,

Defendants.

_____/

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Zhu Guiying (or "Plaintiff"), hereby sues Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule A (collectively "Defendants"). Defendants are promoting, selling, offering for sale, and distributing goods within this district bearing and/or using counterfeits and confusingly similar imitations of Plaintiff's trademarks through various Internet based e-commerce stores, and fully interactive commercial Internet websites operating under the seller identities and domain names set forth on Schedule A hereto (the "Seller IDs and Subject Domain Names"). In support of its claims, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.     This is an action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental

1

jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.     Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district, through at least the Internet based e-commerce stores, and fully interactive commercial Internet websites accessible in Florida and operating under their Seller IDs.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products to consumers in Florida.

**THE PLAINTIFF**

4.     Plaintiff is a resident in Yangzhou, Jiangsu (China). Plaintiff operates online store throughout the world, including within this district. Plaintiff is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality products under common law and federally registered trademark "Fridaynightfunkin", including those identified in Paragraph 44 below. Plaintiff offers for sale and sells its trademarked goods within the State of Florida, including this district, and throughout the United States through online retail websites. Defendants, through the offers for sale and sale of counterfeit and infringing Plaintiff's branded products are directly, and unfairly, competing with Plaintiff's economic interests in the State of Florida and causing harm within this jurisdiction.

2

5.      Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with the Plaintiff's name and associated trademarks and the destruction of the legitimate market sector in which it operates.

6.      In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Plaintiff expends significant monetary resources in connection with trademark enforcement efforts, including legal fees and investigative fees. The exponential growth of counterfeiting over the Internet, including through online marketplace platforms and social media websites, has created an environment that requires companies, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of confusion and the erosion of the goodwill connected to Plaintiff's brand.

**THE DEFENDANTS**

7.      Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from that location. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, and

conduct pervasive business through the simultaneous operation of Internet based e-commerce stores via e-commerce marketplace platforms via Internet based social media platforms or image hosting websites operating under the Seller IDs.

8.      Some Defendants operate the Seller IDs in tandem with electronic communication via private messaging applications and/or services, thereby creating an interconnected ecosystem which functions as an online marketplace operation.

9.      Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by the same Defendant on Schedule A.

10.     Defendants are the past and present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Plaintiff's trademark as described herein operating and using at least the Seller IDs.

11.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale and selling goods bearing and/or using counterfeits and infringements of Plaintiff's trademark to consumers within the United States and this district through the Internet based e-commerce stores, and/or fully interactive commercial Internet websites operating under, at least, the Seller IDs, as well as additional names, e-commerce stores, seller identification aliases, domain names, or websites not yet known to Plaintiff. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing Plaintiff's branded goods into the State.

12.     Defendants have registered, established or purchased, and maintained their Seller IDs. Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the e-commerce marketplace

platforms, social media platforms for the sole purpose of engaging in illegal counterfeiting activities.

13.     Defendants will likely continue to register or acquire new seller identification aliases, e-commerce stores, social media accounts, usernames, private messaging accounts, and domain names for the purpose of selling and offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of Plaintiff's trademarks unless preliminarily and permanently enjoined.

14.     Defendants' Internet-based businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Plaintiff and others.

15.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, e-commerce stores, private messaging accounts, and any other alias seller identification names or domain names used in connection with the sale of counterfeit and infringing goods bearing and/or using Plaintiff's trademark is essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's famous brand name and trademarks to drive Internet consumer traffic to their e-commerce stores, and websites operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## **JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER**

16.     Defendants are the individuals, partnerships, and unincorporated associations set forth on Schedule A hereto.

17.     Joinder of all Defendants is permissible based on the permissive party joinder

rule of Fed. R. Civ. P. 20(a)(2) that permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect t or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.

18.    Joinder of the multiple defendants listed in Schedule A attached hereto is permitted because Plaintiff asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

19.    Joinder of the multiple defendants listed in Schedule A attached hereto serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court.

20.    Joinder of the multiple Defendants listed in Schedule A attached hereto will not create any unnecessary delay nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike.

21.    Joinder of the multiple Defendants listed in Schedule A is procedural only and does not affect the substantive rights of any defendant listed on Schedule A hereto.

22.    This court has jurisdiction over the multiple defendants listed in Schedule A hereto. Venue is proper in this court for this dispute involving the multiple Defendants listed in Schedule A hereto.

23.    Plaintiff's claims against the multiple Defendants listed in Schedule A are all transactionally related.

24.    Plaintiff is claiming piracy against Defendants of Plaintiff's intellectual property rights.

25.     The actions of all Defendants cause indivisible harm to Plaintiff by Defendants' combined actions engaging in similar infringing conduct when each is compared to the others.

26.     All Defendants' actions are logically related. All Defendants are all engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the defendants can easily conceal to avoid any real liability for their actions.

27.     All Defendants are located in China.

28.     All Defendants undertake efforts to conceal their true identities from Plaintiff in order to avoid detection for their illegal activities.

29.     All Defendants have the same or closely related sources for their infringing products with some sourcing from the same upstream source and others sourcing from downstream sources who obtain infringing products from the same upstream sources.

30.     All Defendants take advantage of a set of circumstances the anonymity and mass reach the internet affords to sell infringing products across international borders and violate Plaintiff's intellectual property rights with impunity.

31.     All Defendants have registered their Seller ID's with a small number of online platforms for the purpose of engaging in infringement.

32.     All Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

33.     All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their illegal activities.

34.     All Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event that the Plaintiff's

anti-pirating and anti-counterfeiting efforts are discovered, or Plaintiff obtains a monetary award.

35.     All defendants violated one or more of the Plaintiff's intellectual property rights in the United States by the use of common or identical methods.

36.     All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

37.     Many of the Defendants are operating multiple internet storefronts and online marketplace seller accounts using different Seller IDs listed on Schedule A. As a result, there are more Seller IDs than there are Defendants, a fact that will emerge in discovery.

38.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of infringements and counterfeits of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their infringement and counterfeiting scheme and cause harm to Plaintiff.

39.     Defendants are using infringements and counterfeits of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

40.     Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction.

41.     The natural and intended byproduct of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights

and the destruction of the legitimate market sector in which it operates.

42.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Trademark Right

43.     Plaintiff is the owner of all rights in and to the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (hereinafter, the "Fridaynightfunki Mark").

| Trademark | Registration Number | Registration Date | Class/Goods |
|---|---|---|---|
| Fridaynightfunkin | 6,801,502 | Jul. 26, 2022 | CLASS 28: Children's educational toys for developing fine motor, oral language, numbers, counting, colors and alphabet skills sold in a fabric bag which has a clear vinyl window for viewing small trinkets and toys securely contained within the bag itself; Decorative toy mobiles and plush toys for children made of felt; Modeled plastic toy figurines; Party games; Pet toys; Positionable printed toy figures for use in puzzles; Positionable wooden and plastic figures for use in wooden and plastic puzzles; PVC toy figures; Rideable toy vehicles; Rubber character toys; Stuffed toys; Stuffed and plush toys; Toy construction blocks; Toy vehicles and accessories therefor; Toy, namely, battery-powered computer game with LCD screen which features animation and sound effects |

The Fridaynightfunkin Mark is used in connection with the manufacture and distribution of high-quality products in the categories also identified above. A true and correct copy of the Certificate of Registration for the Fridaynightfunkin Mark is attached hereto as Composite Exhibit "1".

44.     The Fridaynightfunkin Mark has been used in interstate commerce to identify and distinguish Plaintiff's high-quality products for an extended period of time.

45.     The Fridaynightfunkin Mark is symbol of Plaintiff's quality, reputation and goodwill and have never been abandoned.

46.     The Fridaynightfunkin Mark is well known and famous and have been for several years. Plaintiff has expended substantial time, money and other resources developing, advertising or otherwise promoting the Fridaynightfunkin Mark. The Fridaynightfunkin Mark qualifies as a famous mark as that term is used in 15 U.S.C. § 1125(c)(1).

47.     Further, Plaintiff's Mark has extensively used, advertised, and promoted the Fridaynightfunkin Mark in the United States in association with the sale of high-quality products. Plaintiff has spent tens of thousands of dollars promoting the Fridaynightfunkin Mark and products bearing the Fridaynightfunkin Mark.

48.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the Fridaynightfunkin Mark, as being high-quality products associated with Plaintiff.

49.     Accordingly, the Fridaynightfunkin Mark has achieved secondary meaning as identifiers of high-quality products.

50.     Plaintiff has carefully monitored and policed the use of the Fridaynightfunkin Mark and has never assigned or licensed the Fridaynightfunkin Mark to any of the Defendants in this matter.

51.     Genuine products bearing and sold under the Fridaynightfunkin Mark are widely legitimately advertised and promoted by Plaintiff via Internet. Visibility on the Internet, particularly via Internet search engines such as Google, EBay.com, has become increasingly

important to Plaintiff's overall marketing. Thus, Plaintiff expends significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff to fairly and legitimately educate consumers about the value associated with the Plaintiff's brand and the goods sold thereunder.

**Defendant's Infringing Activities**

52.     Defendants are promoting and advertising, distributing, selling, and/or offering for sale goods in interstate commerce using and bearing counterfeit and infringing trademark that are exact copies of the Fridaynightfunkin Mark (the "Counterfeit Goods") through at least the Internet based e-commerce stores, and fully interactive commercial Internet websites operating under the Seller IDs. Specifically, Defendants are using the Fridaynightfunkin Mark to initially attract online consumers and drive them to Defendants' e-commerce stores, and websites operating under the Seller IDs. Defendants are using identical copies of Fridaynightfunkin Mark for different quality goods. Plaintiff has used the Fridaynightfunkin Mark extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

53.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff despite Defendants' knowledge that they are without authority to use the Fridaynightfunkin Mark. The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will

believe all of Defendants' goods offered for sale in Defendants' e-commerce stores, and websites are genuine goods originating from, associated with, and/or approved by Plaintiff.

54.     Defendants advertise e-commerce stores, and websites, including their Counterfeit Goods offered for sale to the consuming public, via e-commerce stores, and/or websites on, at least, one Internet marketplace platform, social media platform, image hosting website, or domain name operating under, at least, the Seller IDs. In so advertising their stores and products, Defendants improperly and unlawfully use of the Plaintiff's Mark without Plaintiff's permission.

55.     As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefiting from substantially similar, and often times coordinated, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Fridaynightfunkin Mark. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous name and the Fridaynightfunkin Mark in order to make their e-commerce stores and websites selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff and non-Plaintiff goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Fridaynightfunkin Mark, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

56.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

57.     At all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Fridaynightfunkin Mark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

58.     Defendants' use of the Fridaynightfunkin Mark, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

59.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

60.     Plaintiff's above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

61.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule A, are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive

activities connected to their Seller IDs and any other alias e-commerce stores, seller identification names, domain names, websites, or private messaging accounts being used and/or controlled by them.

62. Further, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

63. Plaintiff has no adequate remedy at law.

64. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Plaintiff's Mark. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

65. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO §32 OF THE LANHAM ACT (15 U.S.C. § 1114)

66. Plaintiff hereby adopts and realleges the allegations set forth in Paragraph 1 through 65 above.

67. This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusing similar imitation of the Fridaynightfunkin Mark in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of Counterfeit Goods.

68.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the Fridaynightfunkin Mark. Defendants are continuously infringing and inducing others to infringing the Fridaynightfunkin Mark by using it to advertise, promote, offer to sell, and sell counterfeit and infringing Plaintiff's branded goods.

69.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusing, mistake, and deception among members of the trade and the general consuming public as to the origin and quantity of Defendants' Counterfeit Goods.

70.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

71.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the Fridaynightfunkin Mark in violation of Plaintiff's rights under § 32 of The Lanham Act (15 U.S.C. § 1114).

72.     Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminary and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II – FALSE DESIGNATION OF ORIGIN

## PURSUANT TO §43(a) OF THE LANHAM ACT (15 U.S.C. § 1125 (a))

73.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 72 above.

74.     Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of the Fridaynightfunkin Mark have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace platform.

75.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at the Fridaynightfunkin Mark is virtually identical in appearance to Plaintiff's genuine goods. However, Defendants' Counterfeit Goods are different and likely inferior in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

76.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

77.     Defendants have authorized infringing uses the Fridaynightfunkin Mark in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

78.     Additionally, Defendants are using counterfeits and infringements of the Fridaynightfunkin Marks in order to unfairly compete with Plaintiff and others for space within organic search engine, hereby jointly depriving Plaintiff of a valuable marketing which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the EBay.com.

16

79.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III- COMMON LAW UNFAIR COMPEITION

81.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 80 above.

82.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing and/or using marks that are virtually identical to the Fridaynightfunkin Mark in violation of Florida's common law of unfair competition.

83.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing and/or using counterfeits and infringements of the Fridaynightfunkin Mark. Defendants are also using counterfeits and infringements the Fridaynightfunkin Mark to unfairly compete with Plaintiff.

84.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' e-commerce stores and websites as a whole and all products sold therein by their use of the Fridaynightfunkin Mark.

85.     Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

86.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 85 above.

87.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using the Fridaynightfunkin Mark. Plaintiff is the owner of all common law rights in and to the Fridaynightfunkin Mark.

88.     Specifically, Defendants are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of the Fridaynightfunkin Mark.

89.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using the Fridaynightfunkin Mark.

90.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' action.

## PRAYER FOR RELIEF

91.     WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief, and monetary relief against Defendants as follows:

a.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting,

18

distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Fridaynightfunkin Mark; from using the Fridaynightfunkin Mark, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with the Fridaynightfunkin Mark; from falsely representing themselves as being connected with the Fridaynightfunkin Mark, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with the Fridaynightfunkin Mark; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Fridaynightfunkin Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of the Fridaynightfunkin Mark, or in any way endorsed by the Fridaynightfunkin Mark and from offering such goods in commerce;

   b.  Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the Fridaynightfunkin Mark.

c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits, and/or infringements of the Fridaynightfunkin Mark.

d.      Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each  counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

e.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

f.      Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

g.      Entry of an award of pre-judgment interest on the judgment amount.

h.      Entry of an order for any further relief as the Court may deem just and proper.

Dated December 7, 2023.                    Respectfully submitted,

_____
 Andrew J. Palmer
Jared W. Gasman Attorney, P.A.
5353 N. Federal Highway, Suite 402
Fort Lauderdale, FL 33308
Phone: 954-771-7050
ajpalmer@gasmanlaw.com
dkang@gasmanlaw.com